### J. C. Skipwith et al. v. E. S. Hurt, County Judge, et al.

No. 971. Decided January 24, 1901.

1. **County Treasurer—Bank—Commissioners Court—Diversion of County Funds.**

The commissioners court, examining the report of the county treasurer as required by Revised Statutes, article 867, received from him his check on the bank where he kept his deposit as treasurer, for the full amount due, which, being cashed by the bank, was counted by them, found correct, and again deposited to the credit of that officer as county treasurer; but he had not that amount on deposit before, being short in his accounts, and after the return of the money to the bank it appropriated to itself sufficient of the deposit to cover such shortage. Held, that the money was delivered to the commissioners officially, for the county, and became its property despite any secret intention of the officers of the bank to the contrary; and the bank was estopped to deny that it belonged to the county and could not escape liability for the entire sum by appropriating any part of it to the personal debt owed to it by the treasurer. (Pp. 330-334.)

2. **County—Treasurer—Sureties—Bank—Subrogation.**

The sureties on the treasurer's bond, on payment of the amount of his shortage for which the bank was liable to the county, were subrogated to the county's rights against the bank, and could recover the amount from it. (Pp. 331, 332.)

3. **Same—Joinder of Parties.**

The county might have joined, in a suit against the sureties of a defaulting treasurer, a bank which had become liable to it for the same shortage, and though, perhaps, as plaintiff, it might have the right to object to the defendant sureties making such bank a party, such defendants had the right, in the absence of objection from plaintiff, to bring in the bank and have its liability to them settled in the same action with theirs to the county. (P. 332.)

4. **Joinder of Parties.**

The general doctrine of our courts is that the rights of all parties in the subject of litigation may and should be settled in one suit, with the limitation that parties can not be so introduced as to prejudice the rights of those who have already commenced the litigation. (P. 333.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Clay County.

F. L. Miller and others, sureties on the official bond of Skipwith as county treasurer for his second term, obtained writ of error upon a judgment of the Court of Civil Appeals reversing their judgment over against the Farmers National Bank of Henrietta for the amount recovered of them as sureties by the county.

*William Wantland* and *Galloway & Templeton*, for plaintiff in error F. L. Miller and others, sureties on Skipwith's second bond.—Where a defendant has a cause of action over against a third party for the

amount which the plaintiff may recover of the original defendant, such defendant may cause such third party to be made a party to the original action, and may have the entire controversy settled in that suit. Rev. Stats. art. 1208; Norton v. Collins, 20 S. W. Rep., 1113; McCreary v. Douglas, 24 S. W. Rep., 368.

Where a trustee uses trust funds in payment of his individual debts, or where he misapplies same, the party receiving such funds with notice of their trust character will become liable therefor at the suit of the cestui que trust or of any one subrogated to his rights in and to such funds. Anderson v. Walker, 53 S. W. Rep., 824; Kennedy v. Baker, 59 Texas, 150, 162; Merriman v. Russell, 39 Texas, 278, 285; 2 Perry on Trusts, secs. 832, 835-837, and vol. 1, sec. 217; Holloway v. Bank, 47 S. W. Rep., 97; Willis v. Yates, 12 S. W. Rep., 232.

If the moneys furnished by the bank to J. C. Skipwith, or to the Commissioners Court, or the members thereof, ever passed to and became the property of the county, so as to constitute same county funds,—for which these appellees became liable on their bond,—then the subsequent appropriation of such funds by the bank, with knowledge of their trust character, in payment of an individual debt of J. C. Skipwith, rendered said bank primarily liable to said county for all such funds so misappropriated, and the bondsmen, upon making good to the county the shortage thus occasioned, will be subrogated to the county's rights against the bank, and they are entitled to have such rights adjudicated in this action. Anderson v. Walker, 53 S. W. Rep., 824; 1 Perry on Trusts, sec. 217; Bank v. Weems, 69 Texas, 497-500.

If the officers of the bank, acting for it at the times it advanced the money on Skipwith's checks to be counted by the Commissioners Court, knew that he at such times did not have all of the funds belonging to said county, and which he should then have had in his possession, and that it was necessary for him to obtain from the bank additional funds to enable him to settle with the county; and if the bank with notice of such facts, advanced such money to enable said settlement to be made, and it was thus made, said amounts so advanced thereupon vested in the county and became a part of the county funds; and the bank could not thereafter recover or retain same, notwithstanding its officers may have been informed by Skipwith that he was not in fact short in his accounts, and that he had scrip sufficient to cover the apparent shortage, and notwithstanding such advances may have been made in good faith and upon the belief that said statements were true. Anderson v. Walker, 53 S. W. Rep., 824, 825; Bank v. Weems, 69 Texas, 499, et seq.

The county having accepted the money counted, in settlement of a valid obligation, without notice of Skipwith's fraud in obtaining the funds wherewith the settlement was made, was an innocent holder of the funds so received; and these appellees are subrogated to the county's rights in the premises. Brown v. Thompson, 79 Texas, 58; Herman v.

Gunter, 83 Texas, 69; 2 Perry on Trusts, sec. 837; Longmire v. Fain, 18 S. W. Rep., 73; Custer County v. Walker, 74 N. W. Rep., 1040.

The officers of the bank, when they honored the check given by Skipwith to the Commissioners Court to enable them to count the county funds, will be held to know the facts disclosed by their books, and that the amount then in the bank to the credit of Skipwith as treasurer was insufficient to pay such checks, and that the amounts advanced by the bank would constitute a loan to Skipwith for which he would be liable only in his individual capacity. Giddings v. Baker, 80 Texas, 308; Bank v. Burns, 68 Ala., 276; Pratt v. Foote, 9 N. Y., 463; Chambers v. Miller, 13 C. B. (N. S.), 125.

The undisclosed intention of the officers of the bank at the time they advanced for the bank to the Commissioners Court the several sums of money which were counted, was not a material issue in the case, and same could not control the effect of the undisputed facts, and the trial court did not err in refusing to submit such issue to the jury. Longmire v. Fain, 18 S. W. Rep., 73.

A failure of consideration for loans made or money advanced to J. C. Skipwith, treasurer, or to Clay County, would not justify the bank in recovering or repossessing itself of said moneys after such became a part of the county funds, and such failure of consideration would not constitute any defense to this action.

The officers of the bank were authorized to permit depositors to overdraw their accounts in due course of business, and their action in so doing was not ultra vires. Bank v. Burns, 68 Ala., 277.

Money loaned by the bank either to Skipwith individually or as county treasurer in order to enable him to make good to the county any shortage or defalcation in his accounts with the county, and which was so used, passed to, and vested in the county and became county funds, and any application of such funds or any part thereof, by the bank, either with or without Skipwith's consent, to the repayment of such loans, was a misapplication of the funds so used; for which the bank became liable primarily to the county and secondarily to the sureties who are subrogated to the county's rights. Anderson v. Walker, 53 S. W. Rep., 822-825.

The fact, if fact it was, that the bank, at the time it advanced or loaned to Skipwith money to be counted by the Commissioners Court as part of the county·funds, had no notice that he was short in his accounts, would not invalidate such loans, nor would it reinvest appellant with title to the money so loaned or authorize appellant to convert same to its own use and benefit. Oddie v. Bank, 45 N. Y., 735; Bank v. Bank, 17 S. W. Rep., 982; Bank v. Bank, 52 S. W. Rep., 265; Bank v. Burns, 68 Ala., 267; Bank v. Peyton, 39 S. W. Rep., 223; Levy v. Bank, 4 Dall., 254; Bank v. Burkhardt, 10 Otto, 686.

The action of the officers of the bank in advancing and loaning money to J. C. Skipwith to be used by him in making good to the county any shortage in his accounts was not ultra vires, but was within

the authority conferred upon such officers, and the bank was bound by their action in making such loans. Anderson v. Walker, 53 S. W. Rep., 824, 825.

The undisclosed intention on the part of the bank or its officers not to part with the title to the money advanced by it to J. C. Skipwith can not control the facts found by the jury, and such intention, if it existed, would constitute no defense to this action. Longmire v. Fain, 18 S. W. Rep., 73; Custer Co. v. Walker, 74 N. W. Rep., 1040.

*J. F. Carter* and *F. E. Dycus,* for defendant in error the Farmers National Bank. (From brief on appeal.)—The defendant bank was improperly made a party by the sureties on the bond of J. C. Skipwith, said sureties being already parties to said suit, for the reason that said bank could only be made a party by plaintiff, if at all. Thomas v. Chapman, 62 Texas, 193; Blum v. Goldman, 66 Texas, 623; Garrett v. Brooks, 41 Texas, 479; Anderson v. Telegraph Co., 84 Texas, 19; Stewart v. Gordon, 65 Texas, 344; Thomas v. Walsh, 44 Texas, 161; Construction Co. v. Middlegge, 13 S. W. Rep., 257; Frost v. Frost, 45 Texas, 341; Dunson v. Nacogdoches County, 37 S. W. Rep., 978; Frey v. Railway, 86 Texas, 466; Johnson v. Davis, 7 Texas, 173.

The defendant bank must have intended to transfer the title to its money to J. C. Skipwith or Clay County, and it must have consented to said transfer of its title before it can be made liable for any amount adjudged against it. Worthington v. Baughman, 84 Texas, 480; Cleveland v. Empire Mills, 25 S. W. Rep., 1055; Johnson v. Granger, 51 Texas, 45; Smithwick v. Andrews, 24 Texas, 595; Anderson v. Walker, 53 S. W. Rep., 821.

The defendant bank properly requested the court to charge the jury as to its good faith in advancing the amount to be counted as the money of Clay County, because the issue of fraud had been raised by the defendant sureties.

If the officers of the bank relied upon the statement of the county treasurer that he had used a part of the county's funds to pay off the scrip of Clay County, and that he was not short in his accounts, and said money of the bank was counted in lieu of said scrip, then there was no shortage covered by said money, and the title did not pass away from said bank.

The court erred in refusing to submit to the jury special question number 3, which was the only question submitting the issue as to whether it was the intent of the bank to transfer its money to the county of Clay. This was the very question at issue, and no other question was propounded by the court, either for plaintiff or by anyone else, relative to this phase of the question. Traynham v. Jackson, 15 Texas, 172; Shoe Co. v. Mayo, 27 S. W. Rep., 781; Walker v. Tarrant County, 20 Texas, 16; Schussler v. Hennepin County, 67 Minn., 412.

The court should have sustained the bank's exception to the pleas of estoppel set up by defendant sureties, because said pleas did not

show (1) that any false representations were made or false conduct used by this defendant in reference to the account of J. C. Skipwith; (2) or that the county or said sureties acted upon said representations or conduct; or (3) that said county or said sureties suffered any loss or changed their position by reason of any act of this defendant. Weinstein v. Bank, 69 Texas, 43; Bank v. Todd, 47 Conn., 217; Railway v. Dubois, 12 Wall., 64; Anderson v. Hubble, 93 Ind., 579.

No bank officer has the right to pay any overdraft without authority from the bank's board of directors. Mining Co. v. Bank, 104 U. S., 192; Ballard v. Fuller, 32 Barb., 68; Tied. on Com. Paper, sec. 454.

The court erred in rendering judgment against the Farmers National Bank, because the evidence showed that it had faithfully accounted for all the money that was ever paid to it or placed in its custody, and if any money was ever advanced to J. C. Skipwith, it was advanced to him as county treasurer to enable him to take up the legitimate scrip of the county, and said scrip was placed with said bank as collateral security on the money advanced, so that the effect of the transaction was that the bank took up and paid off the outstanding scrip.

If the county treasurer of Clay County overdrew his account as such for the purpose of taking up the county's outstanding scrip, which was deposited with said bank as collateral security for the money advanced on such overdrafts, then such overdrafts became and were legitimate charges against the plaintiff, Clay County.

The court erred in rendering judgment against defendant bank for any sum whatever, because there was no evidence found by the jury that said bank had parted with the title of its money, nor was there any evidence sufficient to support the judgment rendered.

The court erred in entering judgment on the findings of the jury against said Farmers National Bank, because the jury found that the moneys were advanced for the benefit of the county of Clay, and not for Skipwith individually, they further finding that the bank had no notice that Skipwith was short in his account at the time such moneys were advanced.

The court erred in rendering judgment against this bank, because the pretended transfer, loan, or gift of its money to Clay County was not in the usual and customary way that banking business is transacted. It was a transaction outside of the scope and the duties of the cashier and the president of the bank, and was unauthorized by the by-laws of the bank, or resolutions of the board of directors in authority, the defendant being a national bank organized under the laws of the United States.

Neither the president, cashier, nor the individual directors, nor a majority of them acting separately, could bind the national bank in agreeing that the money belonging to the bank should be counted as the money of Clay County.

The court erred in rendering judgment against this defendant bank for any sum of money, because the pretended transactions of November

8, 1897, May 13, 1898, and August 9, 1898, whereby large sums of money belonging to said bank are alleged to have been transferred to Clay County, were without consideration of any kind or character, and were not binding either on the bank, its officers, or stockholders, and the bank had the right to withhold such money from said county as long as it had possession thereof. Bowen v. Bank, 87 Fed. Rep., 430; Bank v. Pirie, 82 Fed. Rep., 799; Bank v. Smith, 77 Fed. Rep., 130; Kelley v. Collier, 32 S. W. Rep., 431; Bank v. Bank, 66 Fed. Rep., 691; Bank v. Atkinson, 55 Fed. Rep., 465; Cameron v. Bank, 34 S. W. Rep., 178; Norton v. Bank, 61 N. H., 589; Bank v. Bank, 47 S. W. Rep., 534; Nicholstone City Co. v. Smalley, 51 S. W. Rep., 527; Railway v. Swisher, 1 App. C. C., sec. 77; 3 Thomp. on Corp., secs. 3905-3908; 3 Id., sec. 4875; Clark on Corp., p. 488.

(From argument on writ of error.)—Counsel for this defendant in error have been informed that the writ of error was granted upon the proposition that the bank was a proper party to the suit. We believe, under the authorities referred to in the opinion of the Court of Civil Appeals, that the court was in error in granting the writ. The bank was not made a party by the plaintiffs, but only by the defendants, who were sued upon an express contract made by them with the plaintiff below, in which they bound themselves to faithfully pay over and account for the moneys belonging to Clay County which might come into the hands of J. C. Skipwith, the county treasurer. This defendant was made a party upon the proposition that it had embezzled such moneys. The action as against this defendant was one sounding strictly in tort, and so far as we are concerned the action can not be said to be one based upon contract. It seems to us that to permit the joinder of this defendant as a party on the cross-answer of the sureties was to complicate the issues and create a departure from the orderly rules of pleading and abolish the distinction existing between actions ex delicto and actions ex contractu. We refer the court to the following as authorities for the proposition on our plea of misjoinder, both as to parties and as to cause of action. Frey v. Railway, 86 Texas, 465, and authorities there cited.

Inasmuch as we have had no means of answering the authorities cited by plaintiff in his application for the writ of error, or in the argument in support thereof, we will submit a supplemental argument with citation of authorities on the following points:

An account was kept by J. C. Skipwith, treasurer, with the Farmers National Bank. Mr. Skipwith not being otherwise described and there being no other evidence of a trust fund held by him than that furnished from the name treasurer, the bank had the right to treat this as an ordinary account, and any deposits made by Skipwith with the bank created the relation of debtor and creditor and did not make the bank a trustee of an express trust. Balbach v. Freelinghuysen, 15 Fed. Rep.,

625; Schmidt v. Barker, 17 La. Ann., 261; Hale v. Richards, 45 N. W. Rep., 734.

Money deposited by a county in such a manner as to impart notice to the bank that the funds are public money does not differ from an ordinary account in that the bank may permit the county to overdraw as other depositors and recover the money for such overdrafts. Kenzie v. Little River County, Fed. Cas., 7829; Saguache County v. Skinner, 8 Colo. App., 272, 45 Pac. Rep., 514; Peed v. McCrary, 21 S. E. Rep., 232; Duncan v. Niles, 32 Ill., 532; Hotel Co. v. Marion County, 1 Wills., 84; Sacramento County v. So. Pac. Co., 59 Pac. Rep., 568; Loring v. Brodie, 134 Mass., 453.

The funds of a national bank can not be disposed of by its officers in any other than the usual and customary way in which its business is transacted, and if its funds are given away or misapplied the bank may sue the holder of them and recover, or if the bank has regained its funds it will not be compelled to surrender them to other persons. Kelsey v. Sargent, 40 Hun, 150; Water Co. v. Thompson-Houston Co. (Ky.), 34 S. W. Rep., 437; Greeley v. Bank, 63 N. H., 145; Bass Foundry v. Parke County, 141 Ind., 68; Wylie v. Bank, 15 Fed. Rep., 428; Bank of Commerce v. Atkinson, 55 Fed. Rep., 465; McCrory v. Chambers, 48 Ill. App., 445; Bank v. Wells, 79 N. Y., 498; Bank v. McCleaster, 2 Penn. Dist., Orr, 546; Groos v. Brewster, 55 S. W. Rep., 590; Bowen v. Bank, 94 Fed. Rep., 925; Slattery v. Bank, 56 N. E. Rep., 606.

Should the court decide that we are a proper party to this suit, then we say that upon the whole case as made judgment should be rendered holding that this defendant is not liable under the facts established by the evidence. Under the authority of the case of Anderson v. Walker, 53 Southwestern Reporter, 820, it seems to us that the District Court certainly erred in holding that the bank was liable under the finding of the jury in response to special questions. In the first place we think it is absurd to say that where, as in this case, the evidence shows that overdrafts were permitted solely for the purpose of taking up the scrip of the county and other evidence of debt created by the county, and such scrip so taken up was turned over to the bank for the purpose of securing the overdrafts, that the bank can not recover for the money so overdrawn. The bank most certainly has a right to hold on to the security until the debt is paid, and when it turns over the scrip or other evidence of debt, it should be credited with the proper sum of money.

It appears from the testimony of Mr. Skipwith, the treasurer, that whenever he overdrew it was for the purpose of paying these debts of the county, and that the proper evidence of such debts was delivered by him as collateral to the bank to secure the loan. But why should not a county be permitted to overdraw? It is true there are some reasons why a county treasurer should not at law be allowed to pledge the credit of the county, and this also applies to any other officer of the county. But the authorities are uniform in holding that where

the county receives the benefit of the money paid to it, it can not hold the money and at the same time repudiate the transaction.

We now recur to the other proposition, which is quite as prominent in this case as the one just discussed, and that is, that in order to hold the bank it must have intended to part with the title to its money unconditionally, with reference to the transaction of August, 1898. It appeared in this instance that the Commissioners Court was allowed to inspect a certain sum of money. They handled the money believing it to be the county's money, but it was by the court returned to the vaults of the bank and mixed with other money. It appears from the testimony of all the parties that it was not intended that this money should pay any debts, but the sole purpose of counting the money was to determine whether it was on hand. Certainly the conduct of the bank was subject to explanation. It is undisputed that the treasurer was short in his accounts, but that he claimed to have the scrip and county warrants on hand to cover the shortage. The bank agreed to let the officers count the money. We may grant for the sake of argument that it was the intention of the bank officers to deceive the county, if the bank did not intend to part with its money but merely intended to induce the Commissioners Court to believe that all of its funds were on hand; then, the bank had the right to hold its money in accordance with its understanding, inasmuch as it had done no act which the county acted upon to its injury. We think that this case is hardly as strong for the sureties as the case of Walker v. Anderson. If it be granted that there is no question of estoppel in the case, then the right of the sureties must be grounded upon the position of a legal liability of the bank.

*H. Finley Weldon, R. E. Taylor, H. A. Allen,* and *W. T. Allen* filed briefs for appellee E. S. Hurt, County Judge.

*Davis & Garnett* and *Barrett & Barrett* filed briefs for P. M. Stine and others, sureties on Skipwith's first bond.

BROWN, ASSOCIATE JUSTICE.—J. C. Skipwith was elected treasurer of Clay County at the regular election in November, 1894, and on the 30th day of that month executed his bond as such county treasurer in the form required by law, with P. M. Stine, J. A. Frazar, J. H. Ferriss, S. M. Satterfield, H. R. Bratt, D. Gilvin, J. B. Ford, John Jackson, R. S. Hilburn, and T. Cash as his sureties. Skipwith was re-elected to the same office at the November election, 1896, and on the 25th day of that month executed his bond in the manner and form required by law, with F. L. Miller, Sidney Webb, C. B. Patterson, S. M. Sears, P. M. Stine, and J. A. Frazar as his sureties

Upon the expiration of his last term of office Skipwith failed to pay over to his successor the money which his report showed to be due from him to the county, whereupon suit was brought in the name of E. S. Hurt, county judge, against Skipwith with his sureties on both

of his bonds, it being alleged that it was difficult to determine the term during which the default occurred. The sureties on the first bond pleaded and contended that the default occurred during the last term held by Skipwith, and the sureties upon the last bond pleaded that the default actually occurred during the previous term to that upon which they became his bondsmen.

The sureties upon the last bond pleaded that Skipwith kept his account and his money which belonged to the county with the Farmers National Bank of Henrietta, and that at each regular term of the Commissioners Court of said county during the said term, and especially in August, 1898, the County Commissioners Court of Clay County, in pursuance of the requirements of the law, received a draft from Skipwith upon the bank for the amount of money shown by his report to be on hand, and that the said Commissioners Court went to the bank with the draft and the bank officers honored the draft and turned over and delivered to the Commissioners Court the sum expressed in the said draft, which was a sum covering the whole amount shown by the treasurer's report to be on hand; that the money was counted by the Commissioners Court and then returned to the bank. It was alleged that the said bank had subsequently appropriated the said money to the payment of a private debt due by Skipwith to it, knowing at the time that it was the money of Clay County and in the hands of Skipwith as its county treasurer. They prayed that the said bank be made a party defendant, and that in case Clay County should recover against them, that they have judgment over against the bank for the same amount. The Farmers National Bank excepted to this plea upon the ground that it was a misjoinder of causes of action, and the trial court overruled the exception.

The case was tried before a jury upon special issues, under which a verdict was returned and judgment entered for Clay County against the sureties on the last bond and in favor of them over against the bank for the same amount. Judgment was entered that the county take nothing against the sureties on the first bond above mentioned. The Court of Civil Appeals reversed the judgment of the District Court in favor of the sureties upon the last bond against the Farmers National Bank and dismissed it from the case, holding that the exception of the bank should have been sustained to the plea which made it a party defendant to the suit, affirming the judgment in favor of the county against the said sureties, and the judgment in favor of the sureties on the first bond.

The verdict of the jury and undisputed facts show that Skipwith, during the two terms, kept his account with the Farmers National Bank, and that at the regular term held in August, 1897, and at each subsequent regular term, including August term, 1898, the Commissioners Court of Clay County examined the report of Skipwith as treasurer of the county, and on each occasion took a draft from Skipwith upon the Farmers National Bank for the amount of money shown by his report to be on hand, and that on each occasion the said court

presented the draft to the bank and the money called for on the face of the draft was delivered to the Commissioners Court and by them counted and found to be correct, after which it was returned to the bank and the draft destroyed. After the money was counted in August, 1898, the bank appropriated to itself the amount shown to be short in the final settlement.

Article 867, Sayles' Revised Statutes, provides: "When the commissioners court has compared and examined the quarterly report of the treasurer and found the same correct, it shall cause an order to be entered upon the minutes of the court, stating the approval thereof, which order shall recite separately the amount received and paid out of each fund by the treasurer since the preceding treasurer's quarterly report, and the balance of such fund, if any, remaining in the treasurer's hands, and shall cause the proper credit to be made in the accounts of the treasurer in accordance with said order, and said court shall actually inspect and count all the actual cash and assets in the hands of the treasurer belonging to the county at the time of the examination of his said report." When the Commissioners Court of Clay County counted the money which belonged to the county in the custody of its treasurer, it acted officially, representing Clay County; the money which the bank delivered to the county officials, upon the presentation of the draft drawn upon it by Skipwith, became the money and property of Clay County, and when returned to the bank, the money went into the custody of the treasurer, whose account was kept in that bank. The Commissioners Court received the money as the property of the county, and the secret intention of the bank's officers could not change the legal effect of their acts. The Farmers National Bank knew that the funds so returned to it by the county officials belonged to the county and that Skipwith held the money in trust for the county. When the bank appropriated the money to its own use or to the payment of a debt which Skipwith may have contracted in order to secure the money to be counted, it rendered itself liable to Clay County for all of the fund so used. Anderson v. Walker, 93 Texas, 119; Love v. Keowne, 58 Texas, 200; Bank v. Investment Co., 74 Texas, 421.

The officers of the bank may have done an act not authorized by law if they made an agreement with Skipwith by which the money of of the bank was to be furnished for the purpose of being counted as the money of the county, but when Skipwith drew a draft upon the bank with which he kept his account, in order to put the county in possession of the money, the officers of the bank had authority to deliver the money to the county officials, who had the right to have actual possession of it to enable them to perform their duty of counting it. The transaction was regular and in the due course of business, and, so far as the county is concerned, was binding upon the bank. The bank is estopped to deny that the money belonged to the county.

The Farmers National Bank being liable to Clay County for the money, it follows that the sureties on Skipwith's second bond, after

having paid the amount for which the bank was liable, would be subrogated to the rights of the county against the bank, and could recover against it to the same extent that the county might have done. Anderson v. Walker, 93 Texas, 119.

Clay County might have joined the Farmers National Bank as a defendant in this suit to recover from it the amount of money which was appropriated by it out of the funds in the hands of its treasurer, Skipwith. All of the defendants were liable for the one subject matter of the suit, the county's money in Skipwith's hands. Bank v. Investment Co., 74 Texas, 421; Love v. Keowne, 58 Texas, 200; Mathonican v. Scott & Baldwin, 87 Texas, 396. If Clay County had made the Farmers National Bank a party defendant to this suit, then the sureties upon the bond of Skipwith could have pleaded over against the bank and could have held it liable for any judgment rendered against them for money which the bank had appropriated out of the trust fund · in its possession. It may be that Clay County could have objected to bringing the Farmers National Bank into this suit as a party defendant, but that question is not presented, for the objection was not made. The question recurs, since the sureties upon the bond had a good cause of action against the Farmers National Bank upon which they might have brought an independent suit against the bank, what reason is there that the bank should not be made a party to this action so as to settle the rights of all the parties in one suit?

In the case of Love v. Keowne, an administrator had, in collusion with certain other parties, invested the funds of the estate that he represented in railroad stocks, which were held by the persons who had confederated with the administrator to make the investment. Subsequently the bondsmen of the administrator called upon him to give a new bond, which he did, and those persons who had received the railroad stock from him became his sureties upon the second bond. A suit was brought by the heirs against the administrator and the sureties upon his first bond, also the sureties upon his second bond, and against those sureties on the second bond for their participation in the misappropriation of the funds of the estate. The question of the joinder of these several causes of action was made in that case by exceptions, and this court held, in a very strong opinion by Judge Stayton, that all of these parties and causes of action were properly joined in that action. Speaking of the sureties upon the second bond, Judge Stayton said: "The sureties upon the second bond are liable to the plaintiffs without regard to their bond for and on account of their having, if the averments of the petition are true, appropriated, in connection with one of the administrators, a portion of the assets of the estate, prior to the time they became sureties, in the purchase of railroad stock, which they must be held to have held in trust for the estate. Having thus connected themselves with the subject matter of the controversy, i. e., with the property of the estate, they are liable, in connection with the sureties upon the first bond, without reference to the bond which they subsequently executed; at least, to the extent

of the assets which they so appropriated, or the value of the property which they acquired by purchase, with the funds of the estate." The court also held that it was the right of the sureties on the first bond to have the proceeds of the funds of the estate, misappropriated while they were bondsmen, which may have gone into the hands of the sureties on the second bond with notice of their character, applied in discharge of their liability. The parties who participated in the misappropriation of the trust fund were liable before the sureties of the administrator. The effect of this holding is that the sureties upon the first bond in that case—who stood in the like attitude as the sureties upon the second bond in this case—had the right to have the funds which were misappropriated applied to the payment and discharge of the obligation of the trustee in order to protect them from liability.

In the case of Love v. Keowne, cited above, the court said: "It has been found impracticable to lay down any positive general rule as to what will or what will not constitute multifariousness, but the courts have wisely left the question as one of convenience, to be decided according to the peculiar circumstances of the case. Every case must be governed by its own circumstances, and, as they are as diversified as the names of the parties, the court must exercise a sound discretion on the subject." The general doctrine of our courts is that the rights of all parties in the subject of litigation may and should be settled in one suit, within the limitation that parties can not be so introduced as to prejudice the rights of those who have already commenced the litigation. In this case the facts are so blended and connected as to the rights of the county against these sureties and their rights against the bank that in the trial of the case, the fundamental fact of the liability of Skipwith must be established in the action by the county against the sureties, which would not bind the bank; and if another action were brought by the sureties against the bank, the same issue must be tried anew, whereas the determination of that issue in this action involves but one trial. The act of the bank in misappropriating the money of the county made it primarily liable at the option of the county, but the county having elected not to sue the bank, the sureties ought not to be required to pay the money and await the result of a suit against the bank, but are entitled to settle the whole matter in this action. We can see no reason why the bank can not have as fair and just a trial in answer to the plea of the defendants as if it had been an independent proceeding by these sureties against it. It will greatly facilitate the administration of justice to sustain such proceedings and save much of the time of the courts in the investigation of questions of this character, and we believe that upon the broad principles underlying our system of procedure, the action of the District Court in overruling the exceptions of the bank was proper and that the Court of Civil Appeals erred in reversing the judgment of the District Court upon that ground.

The facts establish the liability of the Farmers National Bank to Clay County for the money delivered by the officers of the bank to the

Commissioners Court of that county in August, 1898, so far as that money was subsequently misapplied by the bank. The judgment in this case rests upon that transaction, and we find no error in the proceedings of the trial court with reference to that matter. We do not think it necessary to examine the grounds of error alleged against the trial of other issues, because they could not materially affect this judgment; if they all be determined in favor of the bank, the judgment must be the same.

It is ordered that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the District Court be affirmed.

<div style="text-align:right">

*Judgment of Court of Civil Appeals reversed.*

*Judgment of District Court affirmed.*