FIRST STATE BANK OF ARCHER CITY et al. v. POWER. (No. 7822.)

(Court of Civil Appeals of Texas. Ft. Worth. March 7, 1914. Rehearing Denied April 11, 1914.)

EVIDENCE (§ 459*)—PAROL EVIDENCE AFFECTING WRITINGS—CONSTRUCTION OF INSTRUMENT—IDENTIFICATION OF PARTIES.

Where a contract for the sale of a bank was signed by two-thirds of the stockholders in order to bind the bank, reciting that it was executed by M. and others acting for the bank, "and hereinafter called second party," and it was evident that the term "second party" was sometimes used therein to refer to the bank and sometimes to the stockholders, there was such an ambiguity in the instrument as to authorize the admission of parol evidence to show whether the term "second party" in a provision requiring the "second party" to redeem the real estate, furniture and fixtures, was intended to refer to and bind the stockholders or only the bank.

[Ed. Note.—For other cases, see Evidence Cent. Dig. §§ 1722, 1906–1910, 2109–2114; Dec. Dig. § 459.*]

Appeal from District Court, Archer County; P. A. Martin, Judge.

Action by F. M. Power against the First State Bank of Archer City and others. From a judgment for plaintiff, the defendants appeal. Reversed and remanded.

A. A. Hughes and Mathis & Kay, all of Wichita Falls, for appellants. W. E. Forgy, of Archer, and Carrigan, Montgomery & Brittain, of Wichita Falls, for appellee.

SPEER, J. This suit was instituted by F. M. Power against the First State Bank of Archer City, a private banking corporation, and L. F. Gragg, P. P. Langford, Joe W. Kimball, and C. E. Goodwin, based upon a written contract hereinafter set out; plaintiff contending that the defendants, other than the First State Bank, were personally and individually liable upon such contract

for their failure to comply with the latter part of section 9 of the contract, wherein it is stated: "And the second party will on or before the first day of January, 1912, redeem said real estate and furniture and fixtures at the said book value price." These defendants denied that they were individually liable on such contract, but contended that they, along with other shareholders in the bank, had merely signed the contract in order that the assent of the bank might be evidenced by the signatures of a majority of its stockholders. There was a trial before the court without the intervention of a jury, in which judgment was rendered for the plaintiff against all of the defendants as prayed for, and the individual defendants named have appealed.

The contract upon which plaintiff's suit is based is as follows:

"State of Texas, Archer County.

"Know all men by these presents: That this contract made and entered into by and between F. M. Power of Archer City, Texas, and hereinafter called first party, and Lon Morris, of Archer City, Texas, and such other parties as may fix their signatures here below and acting herein for the First State Bank of Archer City, Texas, and hereinafter called second party, witnesseth:

"(1) The first party will on January 25th, 1911, and subject to the limitations and conditions hereinafter mentioned, take over the entire business, including both assets and liabilities of the said First State Bank of Archer City, Texas, and will pay therefor the book value of the capital stock of said bank as shown by the books of said bank at the close of business on January 25th, 1911, subject, however, to the following conditions:

"(2) All notes and accounts that may be bearing interest from any date prior to the 25th day of January, 1911, to be computed and valued at the amount due on such notes and accounts on that date, including principal and interest and such interest due shall be added to the said book value or purchase price. And all notes and accounts bearing interest from any date subsequent to the said January 25th, 1911, to have deducted therefrom the amount of the unearned interest from that date and such unearned interest shall be deducted from the said book value or purchase price. That is to say, the purchase price of said bank is the book value of the capital stock thereof, plus the accumulated interest and less the unearned interest and all interest calculations to be made at the rate of ten per cent. per annum to and from January 25th, 1911.

"(3) Immediately after January 25th, 1911, the first party will pay to any and all the shareholders of the said bank 50 per cent. of one-half of the value of such stock, provided that the stock certificates are presented and have the amount of such payment indorsed

thereon and the remaining portion of the said purchase price to remain on deposit in the Power State Bank of Archer City, Texas, to secure the payment of all notes and accounts included in said purchase and to secure and guarantee that the books and accounts are correct and show the true condition of such notes and accounts.

"(4) The first party will renew, extend and carry over any and all notes and accounts received by him in said purchase that may be desired by second party to the first day of January, 1912, but will not renew, extend or carry over any notes or accounts unless requested to do so in writing by second party, and in doing so will accept such notes and accounts as his own and second party will be discharged from any liability thereon, and second party will furnish request in writing for such extension or renewals from time to time and at any time demanded.

"(5) The first party will do and perform any and all things concerning said business, including keeping the books and looking after the collecting the notes and accounts and will use his best endeavor to get any and all of said business and keep it in proper form without charge of any kind against second party. And will institute and defend all suits and foreclosure proceedings that may be demanded by second party, the second party to pay the court cost and attorney's fees thereof. And the first party will not charge any shortage or default against said escrow account before January 1st, 1912.

"(6) The first party will pay the taxes due against second party and will pay all accounts for stationary and expenses due against second party, not to exceed the sum of two hundred dollars and charge the same to said escrow account as a proper charge against second party.

"(7) It is however understood and agreed that first party does not assume the payment of said taxes or expenses on his own account nor does he assume the payment of any money except such as is shown on the said books of said bank.

"(8) The first party will early in the morning of January 25th, 1911, place a credit deposit on the books of the Power State Bank to the credit of each and every depositor of the First State Bank as shown by their books at the close of the business on January 24th, 1911, an amount equal to such deposits and will pay to any and all of said depositors on demand any portion or all of such deposits and will issue to Lon Morris a duplicate slip showing the credit of each of said depositors.

"(9) The first party will not sell or otherwise dispose of any of the real estate or furniture and fixtures included in this purchase except on such terms and conditions as may be agreed upon by second party, but the second party may sell or dispose of any of the same at any time during the life of this contract, provided the sale is for cash and the proceeds left in the aforesaid escrow account and provided if the sale should be for any other thing than cash, it will require the approval of the first party so that the securities obtained therefor will be available in said escrow account. And the second party will on or before the first day of January, 1912, redeem said real estate and furniture and fixtures at the said book value price.

"(10) The rents and revenues collected for the use of the real estate and furniture and fixtures will be the property of second party, but first party may use so much thereof as may be necessary to reimburse the escrow account for taxes and expenses paid out by first party out of said escrow account.

"(11) It is distinctly stipulated that this contract is binding on the said F. M. Power and Lon Morris, but will have to be acquiesced in by the shareholders or owners of at least two-thirds of the shares of capital stock of said First State Bank before it can bind said bank, and that in the event the required acquiescence of said two-thirds of the capital stock is not secured by their signatures, together with the amount of capital stock owned respectively by January 25th, 1911, then this contract shall be of no effect. But if the required two-thirds are secured by or before said date then and in that event, if either the said Lon Morris or F. M. Power should for any reason fail to fully keep and perform any portion of this contract, then the defaulting party shall pay to the other party by or before February 15th, 1911, the sum of one thousand dollars as liquidated damages.

"(12) The second party, by the appearance of their respective signatures hereto, do hereby sell, transfer and assign unto the first party the aforementioned business according to the aforementioned terms and will not any of them use the house or furniture and fixtures for banking purposes in Archer City, Texas, for the term of five years from this date.

"(12a) The second party do hereby appoint Lon Morris of Archer City, Texas, as their agent to do and perform any and all things necessary or incident to the complete winding up of this contract and the affairs of the said First State Bank and do hereby enter into voluntary liquidation of the said First State Bank.

"(13) The real estate herein mentioned is described as follows: Two lots or parcels of land situated in Archer City in Archer county, Texas, and being a resident place and a business place, and more particularly described as follows: The business place being a part of lot No. five (5) in block No. two (2) according to the plot of said Archer City and being twenty-three and one-half (23½) feet wide fronting south by one hundred and thirty (130) feet deep and being the house and lot upon which the said First State Bank now has its business located. The resident place being lots Nos. two (2), four (4) and

fourteen (14), all in block No. three (3), all in Hillside addition to the said town of Archer City, Texas, as shown, by the Deed Records of Archer county and known as the R. S. Morrison place.

"[Signed] F. M. Power,
"First Party.

"Signatures of second parties:

| Name. | No. of Shares Owned. |
|---|---|
| Lon Morris | 54 shares. |
| L. E. Gragg | 10 " |
| Fredd Gragg | 5 " |
| M. A. Finley | 10 " |
| Clark Melugin | 10 " |
| J. C. Tandy | 40 " |
| F. L. Rhodes | 5 " |
| P. P. Langford | 20 " |
| Joe W. Kimball | 10 " |
| C. E. Goodwin | 10 " |

"State of Texas, Archer County.

"Before me, the undersigned authority, a notary public in and for Archer county, Texas, on this day personally came J. C. Tandy, president, and Lon Morris, cashier, of the First State Bank of Archer City, Texas, each of whom are known to me to be the persons whose names are subscribed to the foregoing instrument and each acknowledged to me that they had signed the same for the purposes and considerations therein expressed and in the capacity therein mentioned.

"Witness my notarial hand and seal this January 25th, 1911.

"W. I. Singleton,
"Notary Public, Archer Co., Tex."

Upon the trial of the case the court excluded and refused to consider evidence of various witnesses offered by appellants which tended to support their defense; that is, to show that, at the time of the execution of the contract, it was clearly understood between the parties to it that the same was not the individual undertaking of these appellants and was not to be binding on them in respect to appellee's present contention, but that the same was the undertaking solely of the bank. This testimony, when offered, was objected to and excluded upon the ground that it served to contradict the legal contract, and the court sustained the objections and excluded the evidence, holding that the contract above set out was unambiguous and bound these appellants as individuals, and rendered judgment accordingly against each of them, as already stated.

The contract is not very artistically drawn, and we ourselves have had much difficulty in determining upon the proper interpretation to be placed upon it. In some parts of the contract "the second party" evidently refers to the bank, while in other parts it is equally obvious that the expression refers to the individual signers. It is not clear to our minds that the "second party" referred to in the last clause of the ninth paragraph, upon whom was imposed the obligation to redeem the real estate, furniture, and fixtures,

refers to appellants, as held by the trial court. On the contrary, considering the lax use of that expression in other parts of the contract, the matter is involved in such doubt as to create an ambiguity in the instrument which would authorize the introduction of oral evidence to show the real intention of the parties. We think the court erred in excluding the evidence tendered by appellants, and for this error the judgment is reversed, and the cause remanded.

Reversed and remanded.