LANGFORD et al. v. POWER et al.
(No. 8588.)

(Court of Civil Appeals of Texas. Ft. Worth.
April 21, 1917. On Motion for Rehearing,
May 19, 1917. Further Rehearing Denied
June 16, 1917.) ·

1. ACTION ⟐⟐50(5)—PARTIES ⟐⟐26—DEFEND-
ANTS—JOINDER.
    In an action against a bank and individual
defendants' who signed a contract for the sale
and purchase of the assets of the banks to re-
cover the difference between the book value of
real estate and the proceeds of a sale of the real
estate on failure of the bank to redeem it as pro-
vided in the contract, there was no error in
overruling the defendant's exceptions presenting
the question of misjoinder of parties defendant
and of causes of action; as the plaintiff's de-
mands against each and all of the defendants
grew out of the same transaction and were so
intimately connected as to render it entirely
proper to determine all in one and the same suit.
    [Ed. Note.—For other cases, see Action, Cent.
Dig. §§ 528, 529; Parties, Cent. Dig. §§ 32–34.]

2. APPEAL AND ERROR ⟐⟐1036(2)—REVIEW—
REVERSIBLE ERROR.
    Misjoinder of parties is not cause for re-
versal where no prejudice appears to have re-
sulted.
    [Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4070.]

3. APPEAL AND ERROR ⟐⟐1062(2)—REVIEW—
REVERSIBLE ERROR.
    In view of the anti-trust statute (Rev. St.
1911, arts. 7796–7809), rendering trusts, mo-
nopolies, and conspiracies in restraint of trade
illegal, and particularly article 7797, making the
consolidation of two or more corporations a mo-
nopoly when any corporation acquires the share,
property, and rights of another to prevent or
lessen competition, directly or ·indirectly, in an
·action involving the purchase of the assets of a
bank by an individual, where the issue wheth-
er the contract was entered into by plaintiff
in behalf of another bank for the purpose of
preventing and destroying competition was duly
presented by defendant's pleadings, refusal of
defendant's request for its submission as a con-
troverted issue of fact was reversible error.
    [Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4213.]

4. MONOPOLIES ⟐⟐23 — EVIDENCE — SUFFI-
CIENCY.
    In an action involving a contract for the
purchase of the assets of a bank by an individ-
ual, evidence held to justify a jury finding that
the individual purchased in behalf of another
bank, and not for himself individually, and that
that bank ratified the transaction in its entirety,
even though its stockholders and directors did
not have prior knowledge thereof, and that they
are chargeable with all the legal consequences
and burdens incident thereto, by virtue of the
anti-trust statute (Rev. St. 1911, arts. 7796–
7809).
    [Ed. Note.—For other cases, see Monopolies,
Cent. Dig. § 16.]

5. EVIDENCE ⟐⟐450(5) — PAROL EVIDENCE —
ADMISSIBILITY. .
    In an action involving a contract for the
purchase of the assets of a bank by plaintiff,
evidence of the negotiations between plaintiff
and one of the individual defendants who sign-
ed the contract leading up to the execution of
the contract, which was ambiguous, was admis-
sible, not upon the theory that such prelimi-
nary negotiations and conversations occurring
in the absence of the adverse party or par-
ties were binding upon them, but simply for

the purpose of showing the understanding of
each as to the meaning of the written contract
in accordance with the familiar rule that, to ex-
plain the meaning of the parties to an ambigu-
ous contract, the situation of the parties and
prior negotiations and surrounding circumstanc-
es may be looked to.
    [Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 2071.]

6. EVIDENCE ⟐⟐471(29)—OPINION EVIDENCE
—CONCLUSIONS—CONTRACTS.
    In an action involving a contract for the
purchase of the assets of a bank by individual,
testimony of one of individual defendants who
signed the contract, which consisted merely of
conclusions and opinions of that witness with
respect to what plaintiff understood by the writ-
ten contract in controversy, was properly ex-
cluded.
    [Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 2174.]

7. APPEAL AND ERROR ⟐⟐215(1) — REVIEW —
INSTRUCTIONS—NECESSITY OF OBJECTIONS.
    In an action involving a contract for the
purchase of the assets of a bank by individual,
where no objection was made at the trial to an
instruction submitting the issue with respect
to the true meaning of the written contract
when read in the light of all the surrounding
circumstances, defendants are in no position to
complain on appeal.
    [Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 1309, 1310; Trial, Cent.
Dig. § 683.]

    Appeal from District Court, Archer Coun-
ty; Wm. N. Bonner, Judge.

    Action by F. M. Power against the First
State Bank of Archer City, P. P. Langford,
and others. Judgment for plaintiff, and P.
P. Langford and others appeal. Judgment
against appellants reversed, and remanded
for another trial, and in all other respects
judgment affirmed on rehearing.

    A. A. Hughes, T. R. Boone, and Kay &
Akin, all of Wichita Falls, for appellants.
Carrigan, Montgomery & Britain, of Wichita
Falls, for appellees.

    DUNKLIN, J. The disposition of a former
appeal of this case is shown in 166 S. W.
382. The suit was instituted by F. M.
Power against the First State Bank of
Archer City, a banking corporation incorpo-
rated under the laws of the state of Texas,
and Lon Morris, L. F. Gragg, P. P. Langford,
C. E. Goodwin, M. A. Finley, J. C. Tandy,
and others, upon a written contract which
is set out in full in the opinion of this court
on the former appeal, to which reference is·
here made.

    As shown by that contract, F. M. Power,
the plaintiff, purchased all the assets of the·
defendant bank upon terms and conditions
therein stated. It appears that the total
consideration to be paid by Power was the
book value of the capital stock of the bank,
which was estimated to be $19,573.33; the
basis of such estimate being the face value
of all notes and accounts due the bank, with
accumulated interest, plus the value of real
estate, furniture, and fixtures, as the same

was listed in the books of the bank. Ten thousand dollars was paid by Power at the time of the execution of the contract, and the balance of the purchase price, $9,573.33, was placed on deposit in the Power State Bank of Archer City, where it was to remain as a guaranty that the books and accounts of the First State Bank were correct and showed the true condition of the notes and accounts transferred to Power. Among the assets belonging to the bank and listed upon its books were its real estate, furniture, and and fixtures, described in the contract, which was listed at $7,058.38. By paragraph 9 of the contract the second party to the contract agreed to redeem the real estate, furniture, and fixtures at the book value thereof on or before the 1st day of January, 1912.

In plaintiff's petition it was alleged, and the proof showed, that said real estate, furniture, and fixtures were not redeemed within the period stated, and that thereafter, under and by virtue of an order of court, the same were sold for the sum of $3,277.50, which was turned over to the plaintiff. The difference between that sum and the sum for which that property was listed on the books of the bank, with interest thereon, was the amount sued for by plaintiff in the present case; the basis of plaintiff's demand being the written contract, and particularly the ninth paragraph thereof.

Judgment was rendered in plaintiff's favor against the bank and also against the individual defendants named above and others whose names are signed to the contract, from which judgment the individual defendants named above, except Lon Morris, have prosecuted this appeal.

On the former appeal this court held that the contract was ambiguous, and that parol testimony was admissible to explain its meaning as understood by those who executed it, and we reversed the first judgment of the trial court because of the refusal of the trial judge to admit parol testimony, which was offered by the defendants for that purpose.

[1, 2] There was no error in overruling the defendant's exceptions presenting the question of misjoinder of parties defendant and of causes of action; as the plaintiff's demands against each and all of the defendants grew out of the same transaction and were so intimately connected as to render it entirely proper to determine all in one and the same suit. Cobb v. Barber, 92 Tex. 399, 47 S. W. 963; Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423. Furthermore, in view of the fact that no prejudice appears to have resulted to the appellants by the misjoinder, if misjoinder there was, then such misjoinder would be no cause for reversal. Thompson v. Griffin, 69 Tex. 139, 6 S. W. 410.

We overrule appellants' contention that the written contract, construed in the light of all the parol testimony introduced upon the trial, shows beyond controversy that the obligation to redeem the real estate, furniture, and fixtures at its book value was the obligation of the First State Bank, and not the individual contract of the defendants who signed the same, and that the trial court therefore erred in refusing appellants' request for an instructed verdict in their favor.

It will be noted that in paragraphs 12 and 12a of the contract the term "second party" is so used that it may reasonably be construed to refer to the individual signers, and in their signatures such individuals also designate themselves as "second parties." Furthermore, according to the testimony of plaintiff, such was the understanding of himself and defendant Lon Morris.

Nor can we say that the court erred in refusing to give appellant's special charge No. 2, which was a peremptory instruction for a verdict in their favor. The request for that instruction was based upon the contention that the evidence showed without contradiction that the contract sued on was entered into by the plaintiff for and on behalf of the Power State Bank of Archer City, another bank then engaged in the banking business in the town of Archer City, and for the purpose on the part of the bank to acquire all the assets of the First State Bank of Archer City, to the end that competition with the First State Bank might thereby be prevented and destroyed, contrary to the provisions of our anti-trust statutes shown in chapter 1, tit. 130, Revised Statutes, which render trusts, monopolies, and conspiracies in restraint of trade illegal, and particularly article 7797, which reads, in part, as follows:

"A monopoly is a combination or consolidation of two or more corporations when effected in either of the following methods: * * * (2) Where any corporation acquires the shares or certificates of stock or bonds, franchise or other rights, or the physical properties, or any part thereof, of any other corporation or corporations, for the purpose of preventing or lessening, or where the effect of such acquisition tends to affect or lessen competition, whether such acquisition is accomplished directly or through the instrumentality of trustees or otherwise."

[3] But we are of the opinion that there was reversible error in the court's refusal of appellant's request for the submission of that issue as a controverted issue of fact; such issue having been duly presented by appellants' pleadings. Power testified that all of the assets of the First State Bank of Archer City acquired by the purchase were turned over to the Power State Bank and entered upon the books of that bank as its property; that the $10,000 paid by him to the stockholders of the First State Bank of Archer City was taken from the Power State Bank, and that he did not charge that money against his individual account with that bank, nor did he give his promissory not to the Power Bank for that sum. He further testified:

"The First State Bank was a corporation when I bought it out. The one object I had in buying the assets of the First State Bank was to increase the business of the Power State Bank. Their buying of that bank would get rid of competition. * * * My purpose in buying out the First State Bank and the one that I had in view was to get rid of competition. * * * None of the stockholders of the Power State Bank ever raised any objection to my taking over the assets of the First State Bank and placing them in the Power State Bank as its assets, and paying for them by the Power Bank. We had stockholders' meeting after that, and from an examination of the affairs of the bank they were bound to see that the Power State Bank had actually taken over the assets of the First State Bank, and they raised no objection."

He further testified that he was president of the Power State Bank at the time of the transaction, and owned three-fourths of its capital stock, and other testimony given by him was along the line of that quoted above.

The following resolution passed at a regular stockholders' meeting of the Power State Bank on February 10, 1911, 16 days after the execution of the contract of purchase by Power, was introduced in evidence:

"Since our last regular meeting the entire business of the First State Bank was taken over, all resources and liabilities amounting to $51,075.12. After careful examination of the contract with reference to the same which is recorded in Book 47, Deed Records of Archer County, Tex., this matter was fully examined and approved."

Plaintiff, Power, testified that he wrote that resolution himself, and in that connection testified that his contract of purchase of the assets of the First State Bank had been filed for record on February 3, 1911. He further testified as follows:

"I did not borrow any money of the bank to pay for these assets. I put the assets into the bank and got the money. I made them the assets of the bank and entered them on the books as a part of the assets of the bank. I did not place them there as collateral security for any debt of mine. On April 17, 1911, we had a meeting of the directors in which it was stated that none of the stockholders were indebted to the bank in any sum that was written in the minutes."

However, Power further testified that he made the contract for himself, that no one else was interested in it, that prior to the making of the contract he never consulted any of the stockholders or directors of the Power State Bank concerning the purchase of the assets of the bank, and further as follows:

"The bank charged me up with some of the losses, altogether about $1,300. I paid that much out of my individual funds. I paid this $1,300 to the Power State Bank of my own volition. No one requested me."

[4] But we do not think that the testimony of Power last referred to necessarily should be given controlling effect. In view of the other evidence, we think that the jury would have been authorized to find that the transaction in controversy by Power was intended by him as the transaction of the Power State Bank, and not for himself individually, and that that bank ratified the transaction in its entirety, even though its stockholders and directors did not have prior knowledge thereof, and that they are chargeable with all the legal consequences and burdens incident thereto. 1 Mechem on Agency, §§ 435, 438 and 506.

[5] We are of the opinion further that there was no error in the action of the court in admitting in evidence the negotiations between Power and Lon Morris leading up to the execution of the contract. Lon Morris was one of the defendants who was sued by Power, and certainly such evidence was admissible as against him. It was admissible also as against the other defendants for the purpose of showing the understanding of Power with respect to the meaning of the written contract, which was ambiguous, just the same as was the testimony of the defendants themselves as to what was said to them by Lon Morris and statements by them in reply thereto when they executed the contract. Of course, all of such testimony introduced by the respective parties was admissible, not upon the theory that such preliminary negotiations and conversations occurring in the absence of the adverse party or parties were binding upon them, but simply for the purpose of showing the understanding of each as to the meaning of the written contract in accordance with the familiar rule that to explain the meaning of the parties to an ambiguous contract the situation of the parties and prior negotiations and surrounding circumstances may be looked to.

[6] There was no error in excluding the testimony of the witness Lon Morris referred to in assignments 12 to 21, inclusive, since such testimony consisted merely of conclusions and opinions of that witness with respect to what plaintiff Power understood by the written contract in controversy.

[7] Even though it could be said that the criticism was just as made by appellants of the court's instruction to the jury submitting the issue with respect to the true meaning of the written contract when read in the light of all the surrounding circumstances, appellants are in no position to complain, since no objection was made thereto upon the trial. G., T. & W. Ry. Co. v. Dickey (Sup.) 187 S. W. 184.

For the error indicated, the judgment is reversed, and the cause remanded.

## On Motion for Rehearing.

The only part of the judgment of the trial court which was reversed is that rendered in favor of plaintiff in the trial court against those defendants who are appellants here, and the cause is remanded for another trial of the issues as between plaintiff and those defendants only. In all other respects the judgment of the trial court is left undisturbed; no appeal from or complaint of such portions thereof being made in this court by any one. Our decision upon original hearing was intended to have the effect stated above, although such was not definitely expressed.