KEEL & SON v. GRIBBLE–CARTER
GRAIN CO. et al.†

(Court of Civil Appeals of Texas. Texarkana. Dec. 29, 1911. On Motion for Rehearing, Jan. 25, 1912.)

1. PARTIES (§ 51*)—CONTRACT ACTIONS—DEFENDANTS—PRIVITY OF CONTRACT—NECESSITY.

Where plaintiff sued defendant grain company for breach of contract to furnish a car load of corn of a certain quality, defendant was not entitled to bring in as a codefendant a third person with whom it contracted to furnish a car load of corn of the same quality for the stated purpose of filling plaintiff's order, with the view of obtaining judgment over against such third person for furnishing corn of an inferior quality; the two contracts being distinct, and there being no privity of contract between plaintiff and the third person.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 77–82; Dec. Dig. § 51.*]

2. PARTIES (§ 93*)—IMPROPER PARTIES—MANNER OF OBJECTION.

The proper manner of objecting to defendant bringing in another person as defendant to obtain judgment over against such other is by demurrer for misjoinder of defendants.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 153, 154; Dec. Dig. § 93.*]

On Motion for Rehearing.

3. APPEAL AND ERROR (§ 1099*)—DISMISSAL—SUBSEQUENT APPEAL.

Though a prior appeal of plaintiffs in error was dismissed for a defect in the appeal bond which could have been amended in the appellate court, their refusal to amend the appeal bond is not ground for dismissing the present writ of error at the request of defendant in error, who urged the dismissal of the prior appeal when the case might have been heard on the merits.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1099.*]

---

. Error from Lamar County Court; L. L. Hardison, Judge.

Action by J. S. Williams against the Gribble-Carter Grain Company, in which defendant cross-complained against Keel & Son. Judgment for plaintiff against the principal defendant and for it against Keel & Son, and the latter bring error. Judgment against Keel & Son reversed, and cross-action dismissed without prejudice, and judgment for plaintiff affirmed.

See; also, 134 S. W. 801.

Davis & Thomason, for plaintiffs in error. Burdett & Connor and Lightfoot, Long & Wortham, for defendants in error.

HODGES, J. On February 9, 1910, J. S. Williams, one of the defendants in error, sued the Gribble-Carter Grain Company, a private corporation, in the county court of Lamar county, alleging in substance the following facts: That in November, 1908, by a written contract he purchased from the Gribble-Carter Grain Company a car load of No. 2 mixed corn in bulk at 70 cents per bushel, to be delivered to him f. o. b. the cars at Brookston, Tex.; the car to contain from 1,000 to 1,200 bushels. According to the terms of the contract, and according to the usage and established custom, the meaning of the grade and quality of No. 2 mixed corn was that such corn was to be dry, free from weevil, and sound. On the 25th day of November, 1908, in pursuance of the above-mentioned contract, the Gribble-Carter Grain Company shipped to him at Brookston, Tex., a car of 1,200 bushels of corn and drew on him for the price, with bill of lading attached. The draft was sent to a bank in Paris, Tex., for collection, and he was compelled to pay the same before he had an opportunity to inspect the corn and ascertain its quality and condition. The car was not delivered to him until after he had paid the draft. After receiving the car of corn, he then for the first time discovered that the corn was not No. 2 mixed, the kind he had contracted for, but was damaged, unsound, full of trash and weevil, and was unfit for horse feed, the purpose for which it had been purchased, and was not worth in the Brookston market more than 25 cents per bushel. He immediately thereafter notified the Gribble-Carter Grain Company that the corn was not the kind he had contracted for, and asked to be advised by them as to what disposition should be made of it. The Gribble-Carter Grain Company failed to give any such advice, and failed to perform its contract; and he therefore prayed for damages in the sum of $600.

The Gribble-Carter Grain Company answered by a general demurrer and a general denial and by the following special answer seeking to have Keel & Son, plaintiffs in error, made parties defendant: "For further defense to this action and for plea over against Keel & Son, a copartnership composed of J. Z. Keel and W. L. Keel, who reside in Cooke county, Tex., avers and charges that it is true, as alleged in plaintiff's original petition, that about November 16, 1908, plaintiff purchased of defendant a car of No. 2 mixed corn in bulk to be delivered to plaintiff at Brookston, Tex., free on board cars at that point, the said car to contain 1,000 to 1,200 bushels of corn, which purchase and the terms thereof was evidenced by written contract entered into by defendant with plaintiff on or about the date aforesaid. And it is true, as alleged in plaintiff's original petition, that according to the terms of said written contract and according to the usual, customary, and well-established meaning of the words, grade, and quality of No. 2 corn, such corn was to be dry, free from weevil, and in good condition and sound; that it is true that by the terms of said written contract defendant became bound to furnish and deliver to plaintiff the said corn free on board cars at Brookston, Tex., at and for the price to be paid by plaintiff to defendant, which was 70 cents per bushel; and it is true that about November 25, 1908, defendant, through and by said Keel & Son, shipped to plaintiff at Brookston, Tex., a car of 1,200 bushels of corn and made a draft on plaintiff for the contract price of the said corn aforesaid, which amounted to $790.67, freight charges thereon, which was $49.33, added, making said draft $840, which said draft was duly paid by plaintiff. That said car of corn was purchased by defendant from said Keel & Son on said November 16, 1908, for the special purpose of being shipped to said Brookston, Tex., to comply with defendants' said contract with plaintiff, all of which said Keel & Son well knew, and said purchase of corn was made with Keel & Son before defendant finally entered into and closed the contract with plaintiff to sell and ship to him said car of corn as aforesaid; the sale to plaintiff being dependent upon defendants' ability to purchase said car of corn from said Keel & Son, which they well knew. That the defendant would not have purchased said corn from said Keel & Son, but for said contract with plaintiff. That defendant never saw or inspected said corn or a sample of it before it was shipped by said Keel & Son, as aforesaid, but relied wholly upon said Keel & Son to ship to said Brookston, Tex., said car of corn of the grade, quality, and condition that defendant was to furnish to plaintiff under defendants' said contract with plaintiff, which said Keel & Son promised and agreed to do. That said Keel & Son about November 25, 1908, shipped said car of corn from Gainesville, Tex., to said Brookston, Tex., and defendant paid them for same in full. That if said car of corn was No. 2 mixed corn of the kind and character that defendant had contracted to deliver to plaintiff, but was wet, damp, heating, moulding, unsound, full of trash, and infested with weevil, and in such condition

that it was unfit for horse feed, as charged in plaintiff's original petition, then defendant avers and charges that defendant had no knowledge or means of knowing that said car of corn was of the kind and in the condition alleged in plaintiff's original petition aforesaid, and if such were the facts as to said car of corn, which are here adopted, defendant avers and charges that said Keel & Son broke their said contract with defendant, and thereby became liable and promised to pay defendant the difference between the market price of said car of corn at Brookston, Tex., at the time said car of corn reached said Brookston, Tex., of the kind, grade, quality, and condition stipulated in the contract between defendant and plaintiff, and defendant and said Keel & Son, the said contracts being in all things substantially the same, and the market value of said car of corn at the time and place aforesaid of the kind and condition alleged in plaintiff's original petition aforesaid, which it really was. That the said contract between defendant and said Keel & Son was in writing and was substantially as hereinbefore alleged. That said Keel & Son knew the true quality and grade of corn when they shipped it, or were duly and truly notified of the quality, grade, and condition of the same after it became known to the defendant, and they were thereby given an opportunity to deal with said car of corn as they might desire to do, but that they did not avail themselves of such opportunity. That in the event plaintiff should recover against the defendant, then, and in that event, defendant will be entitled to recover over against Keel & Son the amount so recovered against it by plaintiff."

Keel & Son answered by pleading their privilege of being sued in the county of their residence. They also excepted to the answer of the Gribble-Carter Grain Company as follows, "because it appears therefrom that these defendants are improperly joined as defendants in this cause, and that said Gribble-Carter Grain Company has no right to sue these defendants in this cause, and of this they pray the judgment of the court." This exception was followed by a general denial and a special answer which it is not necessary to here notice. The court overruled Keel & Son's plea of privilege and demurrer, tried the case upon its merits, and rendered a judgment in favor of Williams against the Gribble-Carter Grain Company for the sum of $452 and in favor of the Gribble-Carter Grain Company for the same amount against Keel & Son. The judgment, after providing for the issuance of an execution, contains this further direction: "And that any moneys collected thereby shall by the officer collecting the same be applied on the judgment herein rendered in favor of the plaintiff J. S. Williams against the defendant Gribble-Carter Grain Company."

Within the time prescribed by law Keel & Son prosecuted an appeal to the last term of this court; but on motion of the appellees in that suit the appeal was dismissed in February, 1911, because of a defect in the appeal bond. See Keel & Son v. Gribble-Carter Grain Co. et al., 134 S. W. 801. Keel & Son now prosecute this writ of error from the same judgment.

Defendants in error have filed a motion to dismiss the writ because the plaintiffs in error voluntarily abandoned their former appeal in such manner as to substantially delay the collection of the judgment appealed from. It is not denied that the prosecution of this writ of error is within the time prescribed by the statute, and that this court has jurisdiction to determine the controversy upon its merits. If the writ should be dismissed, it must be upon the ground that it is being employed as a means of delaying the defendants in error in the execution of their judgments procured in the court below. This, it seems, has been held to be a sufficient reason. Perez v. Garza, 52 Tex. 571. The judgment dismissing the former appeal was rendered in February, 1911, and the motion for rehearing was overruled March 2d following. It has been authoritatively decided that a bond which is merely defective—that is, one containing only such defects as may be cured by the substitution of a new bond in the appellate court—is sufficient to give the Court of Civil Appeals jurisdiction to decide the merits of the controversy in the absence of a motion by the appellee to dismiss. Hugo v. Seffel, 92 Tex. 414, 49 S. W. 369; Wandelohr v. Grayson Co. Nat. Bank, 90 S. W. 180. There was no effort upon the former appeal to supersede, or appeal from, the judgment rendered in favor of Williams against the grain company. It was only the judgment against Keel & Son that was involved. Neither does this writ of error affect the judgment of Williams against the grain company. The bond in the former appeal was merely defective, and might, under the provisions of the statute, have been amended in this court. See Rev. Civ. Stat. art. 1025; Acts 1905, p. 224; Hugo v. Seffel, supra. The refusal of the appellants in that appeal, who are now plaintiffs in error, to amend their bond so as to cure that defect, can be construed in no other light than as a voluntary abandonment of their appeal. This they had the right to do, and to subsequently prosecute this writ of error, subject, however, to the right of the appellees to have the judgment affirmed on certificate. Welch v. Weiss, 40 Tex. Civ. App. 257, 90 S. W. 160; Insurance Co. v. Clancy, 91 Tex. 467, 44 S. W. 482.

The question then is: Could the defendants in error, Williams and the grain company, have pursued that remedy and secured an affirmance on certificate after the dismissal of the former appeal? They could unless it should be said that the defective appeal bond was insufficient to "perfect the appeal," or that it became unavailable for

that purpose after the judgment of dismissal rendered by this court. If that bond was sufficient to authorize this court to proceed to an adjudication of the appeal upon its merits, had there been no motion to dismiss, it would hardly be reasonable to say that it was not sufficient to form the basis of a motion to affirm on certificate, where no such objection would or could be raised. Let us suppose, by way of illustration, that after the filing of the defective appeal bond in the court below no transcript had been sent to this court within the time prescribed by law. In such an event one of two situations would have existed: (1) There would have been from the beginning no suspension of the judgment of the court below, because of the absence of a sufficient bond; or (2) if the bond was sufficient to suspend the judgment of that court, then the appeal was so far perfected as to authorize a motion in this court to affirm on certificate. It follows, therefore, that if the bond was so defective that it could not have formed the basis of a motion to affirm on certificate, it did not operate to suspend the execution of the judgment appealed from, and the parties interested might have proceeded in the proper manner to collect their money. Chambers v. Miller, 7 Tex. 75. If that be correct, then the defendants in error cannot claim that their judgment was superseded till this writ of error was sued out. Such would be the attitude of the parties in the event that there had been no judgment dismissing the appeal because of the defect before indicated in the appeal bond. That defect was the absence of Williams as a proper party to the bond. This court held that when a motion had been filed raising that objection it must be sustained; and, if the defect were not cured by filing a new bond supplying the omission, the appeal must be dismissed. The effect of the judgment of dismissal was merely to determine that the bond was defective in that particular, and in the face of an objection seasonably urged this court would not proceed to determine the appeal upon its merits. Such an objection is in the nature of a plea in abatement, urging a defect which does not go to the substance of the action, or the appeal, as the case may be, but simply to the manner of proceeding, as, for instance, the want of proper parties. It is not such a defect as the court is bound to notice sua sponte, but is simply an irregularity which may be waived by the only party who has the right to object. The judgment of dismissal determined only that particular issue; that is, that Williams was a necessary party to the bond. So far as that appeal is concerned, it was ended by that judgment; but the validity or sufficiency of the bond for any other purpose was not, in that decision, adjudicated or determined.

The statute provides three methods of having judgments from trial courts passed upon in the Courts of Civil Appeals: (1) By appeal in the usual form; (2) by writ of error; and (3) by a motion of the appellee to have the judgment affirmed on certificate. These are three separate and distinct methods of procedure, governed by the different provisions of the statute creating them. An appeal bond may be sufficient to form the basis of a motion to affirm on certificate, and still not be such a bond as the appellee, or defendant in error, has the right to insist upon having filed when the appeal, or writ of error, seeks to have the controversy reviewed upon its merits. Under the provisions of article 1016 of the Revised Civil Statutes, giving the right to an affirmance on certificate, it does not appear to be required that a copy of the appeal bond should accompany the motion. The affirmance may be granted without giving any relief on the bond against the sureties. The appellant, or defendant in error, in such a proceeding could not claim to be prejudiced by this construction of the law, for the reason that if the filing of his bond, though defective, suspends the execution of the judgment of the trial court and is sufficient, in the absence of an objection, to have an adjudication of his appeal or writ of error upon its merits, he has perfected an appeal which by an amendment might be carried to a finality. If a tenable objection is urged by the appellee on account of the defect and the appeal is dismissed, the termination of the appeal in that manner must be attributable to the voluntary action of the appellant in electing to not amend. The record shows that the motion for a rehearing on the judgment dismissing the former appeal was overruled on the 2d day of March during the last term of this court; that there remained of that term about four months, during which time the present defendants in error might have filed in this court a motion to have their judgment affirmed on certificate. This they failed to do, and in so doing they have failed to interpose any barrier to the prosecution by the plaintiffs in error of this writ of error. Hence our conclusion is that defendants in error are not now in a position to insist upon the objection urged. The reasons, therefore, which would entitle them to a dismissal of this writ are wanting, and we think the motion should be overruled. The situation of the parties is unlike that shown in Perez v. Garza, supra.

[1] We come, then, to the consideration of the assignment of error complaining of the action of the court in overruling the exception to the answer of the Gribble-Carter Grain Company, making plaintiffs in error parties defendant and asking for a judgment against them in the event Williams recovered one against the Gribble-Carter Grain Company. It is difficult, if not impossible, to discover any clearly defined rule for determining when third parties may be brought.

into a suit to answer the cross-complaint of a defendant. It seems that the courts have been disposed to regard the propriety of bringing in such new parties as largely dependent upon the facts of each particular case, and have been governed by what may appear as essential to an equitable and orderly determination of the particular controversy. The legal effect of the cross-complaint of the Gribble-Carter Grain Company is to allege substantially as follows: That it made a contract with Williams to sell and deliver to him a car load of No. 2 mixed corn of the kind and quality alleged by him and at the price named; that the corn in controversy was shipped by Keel & Son in fulfillment of that contract; that it was damaged as claimed by Williams; that this corn was purchased by the Gribble-Carter Grain Company from Keel & Son November 16, 1908, before it had concluded its contract for the sale of the corn to Williams, and for the special purpose of filling this order given by Williams, all of which was known to Keel & Son; that the sale to Williams was made dependent upon the ability of the Gribble-Carter Grain Company to purchase the corn from Keel & Son, which the latter knew; that the Gribble-Carter Grain Company did not know the condition of the corn, had never seen it, and depended upon Keel & Son to ship the kind and quality called for in their contract, which the latter agreed to do; that Keel & Son broke their contract with it, Gribble-Carter Grain Company, and thereby became liable to it for the difference between the market price of the corn at Brookston at the time it reached there and the market price of such corn as should have been furnished, claiming that the contract between Williams and the Gribble-Carter Grain Company and between the latter and Keel & Son were in all things substantially the same; that Keel & Son knew the true quality and grade of the corn which they shipped, or were duly notified of it and were given an opportunity to deal with the corn as they might desire to do, but failed to avail themselves of such right. This clearly sets out the making of two distinct and independent contracts; one by the Gibble-Carter Grain Company with Williams, and another by it with Keel & Son. Williams had no concern with, or interest in, the contract made with Keel & Son, and the latter had none in the contract made with Williams. Williams could not have sued Keel & Son for their failure to deliver him the corn of the kind and quality he had contracted for; neither could Keel & Son have sued Williams for the purchase price had he failed to make payment. Keel & Son were to fill the order given by the Gribble-Carter Grain Company in fulfillment of an engagement entered into before the contract was made with Williams, and they must look to that company for payment. The fact that they knew the pur-pose for which the corn was purchased by the grain company did not affect the terms of their written agreement with it, nor create any privity of contract between them and Williams. It may be that Keel & Son failed to deliver corn of the kind and quality provided for in their contract and in the contract of the grain company with Williams. If so, their liability is to be determined by their own contractual engagement, and not by the engagement of the Gribble-Carter Grain Company with Williams. The latter's contract furnished no part of Keel & Son's. They did not agree in terms to fill Williams' order according to its stipulations, but agreed to sell and deliver corn of the quality and quantity in their own contract. The fact that the two contracts called for the same quantity and quality of corn to be delivered at the same place to the same individual is a mere coincidence and cannot be looked to in determining the relationship between the parties. The fact that the two contracts are substantially the same in terms and conditions and times of performance does not of itself create identity. Each of the contracting parties must, after all, be governed by his own contract; one cannot be substituted for the other. If it be held that there was no privity of contract between Williams and Keel & Son, and that Keel & Son in no sense were considered as representatives of the grain company, then there is no basis for the contention that they are proper parties to this suit.

In the case of Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423, seemingly the one most in point in sustaining the contention of the defendants in error, considerable latitude was allowed in bringing in new parties. But the later case of U. S. Fidelity & Guaranty Co. v. Fossati, 97 Tex. 497, 80 S. W. 74, lays down a more restricted rule. The latter was a case in which the state sued the sheriff and the sureties on his official bond under the provision of article 2310 of the Revised Civil Statutes, for balance due for taxes collected and unaccounted for. The sureties sought to have the U. S. Fidelity & Guaranty Company made a party defendant upon the ground that this company had executed to them a bond indemnifying them against any loss resulting from any act, or fraud, or dishonesty amounting to larceny or embezzlement on the part of the sheriff. It was in effect averred by the sureties that the sum sued for by the state was covered by this bond, and that the same was due them by virtue of its terms. They asked for judgment over against the company in the event the state recovered against them in the suit. After discussing the right of parties to have their indemnitors brought into such actions, the court said: "In order to enforce in this case the right contended for by appellees, it would be necessary to hold, without qualification, that in all cases

where a judgment against a defendant might give rise to a cause of action in his favor against another, he is entitled, as matter of right, to bring that other into the case. This court has never so held, but, on the contrary, in the early cases referred to, while laying down liberal rules as to the making of new parties, has always required the existence in such parties of some privity with or interest in the pending action. Burditt v. Glasscock, 25 Tex. Supp. 45; Hurlock v. Reinhardt, 41 Tex. 580; Eccles v. Hill, 13 Tex. 65, 66. Indeed, the existence of the right of a defendant in all cases to implead other parties who might become liable to him as a result of a judgment against him, regardless of other considerations, has been expressly negatived. Thomas v. Chapman, 62 Tex. 197; Frey v. Railway, 86 Tex. 465, 25 S. W. 609; Coutlett v. United States Mort. Co., 60 S. W. 820." This is the latest expression of the Supreme Court on this subject, so far as we have been able to ascertain, and seems to be much in point, if not decisive of the question involved. See, also, Zan v. Clark, 53 Tex. Civ. App. 525, 117 S. W. 892, and Thomas v. Chapman, 62 Tex. 193.

[2] The sole purpose of bringing Keel & Son into this suit was to have the judgment rendered against the Gribble-Carter Grain Company in favor of Williams form the basis of a judgment in its favor against Keel & Son. An objection to this method of procedure may be taken by demurrer. Frey v. Ft. Worth & R. G. Co., 86 Tex. 465, 25 S. W. 609.

The judgment of the county court overruling the exception and rendering judgment in favor of the Gribble-Carter Grain Company against the plaintiffs in error will be reversed, and judgment here rendered dismissing the cross-action, but without prejudice to the right of the Gribble-Carter Grain Company to bring an independent suit for the damages claimed. The judgment in favor of Williams against the Gribble-Carter Grain Company is not disturbed.

### On Motion for Rehearing.

Defendants in error have filed two motions, in which they separately assail the conclusions reached in the original disposition of this case. In one they attack our ruling in refusing to dismiss the writ of error. It is contended that the grounds upon which that conclusion was based are in conflict with the statutory provision with reference to the right of an affirmance on certificate. There is much force in the argument, and, upon reconsideration, we feel constrained to recede from the proposition there announced, that defendants in error could have had an affirmance of their judgment on certificate during the last term after the appeal had been dismissed in this

court. The authorities bearing upon that question are somewhat in conflict, as will be seen by reference to the following cases: Farquhar v. McFarland, 13 Tex. 92; Hall v. La Salle Co., 46 S. W. 863; Morris v. Morgan, 46 S. W. 667; G., C. & S. F. Ry. Co. v. Hall, 76 S. W. 590; Rio Grande & E. P. Ry. Co. v. Mendoza, 66 S. W. 578; Santaleben v. Richter, 126 S. W. 926; Trent v. Rhomberg, 66 Tex. 249, 18 S. W. 510.

[3] In some of the cases cited the position taken by this court, that an affirmance on certificate could be had after the transcript had been filed and the appeal dismissed, is sustained, and by others the contrary rule is announced. The matter is in such doubt that we are not disposed to rely upon that ground as a justification of the ruling made. However, we think that there are other and sufficient grounds besides that mentioned for overruling the motion. The appeal while pending in this court was dismissed at the special instance of the defendant in error Gribble-Carter Grain Company. But for its insistence upon having it dismissed the controversy might have been determined upon its merits during the last term of the court. While it is true the plaintiffs in error, who were then the appellants, might have amended their bond in this court, yet their refusal to do so does not furnish sufficient grounds for penalizing them by having the present writ dismissed.

We have again carefully considered the ruling made in disposing of the demurrer, and have reached the same conclusion.

The motion for rehearing is therefore overruled.