**EARLY–FOSTER CO. v. A. P. MOORE'S SONS, Inc. (No. 2475.)** *

(Court of Civil Appeals of Texas. Texarkana. Jan. 24, 1922. Rehearing Denied Feb. 2, 1922.)

1. Sales ⊙⟌87(3)—Term "f. o. b. Chicago" shown only to fix price, and not place of delivery.

Evidence, in action on a contract of sale of a car of sugar, *held* to show that the term "f. o. b. Chicago," in the stipulation of the contract that the price was "twenty-four and one-half cents per pound, net cash, f. o. b. Chicago," was used and intended only to fix the price, and not to fix the place of delivery at Chicago.

[Ed. Note.—For other definitions, see. Words and Phrases, First and Second Series, F. O. B.]

2. Sales ⊙⟌202(6)—Under contract delivery to carrier held delivery to buyer, relative to liability to pay stipulated sight draft.

Defendant at T. contracted with plaintiff for 500 sacks of sugar in "a rolling car" or car ready for movement, for resale, which was the next day to be shipped to plaintiff from S. to T. by the party from whom plaintiff had obtained it, the terms being "twenty-four and one-half cents per pound, net cash, f. o. b. Chicago," price to be paid immediately on presentment of sight draft, and while the car was in transit to T., consigned to plaintiff, plaintiff on instructions of defendant diverted it to the P. Company at Detroit, to whom defendant had resold it, consigned to plaintiff's order, notified P. Company, and drew sight draft on the P. Company. *Held* that, there being no agreement to deliver the sugar at Chicago or Detroit, its delivery to the carrier constituted a delivery and passed title to defendant, though plaintiff had not parted with control of the sugar, so that payment of the sight draft being refused, because of nonarrival of the sugar, defendant was liable on the contract.

3. Parties ⊙⟌51(4)—No abuse of discretion in not allowing buyer sued by seller to implead carrier for delay in transportation; "necessary party."

There was no abuse of discretion in not allowing the buyer of a car of sugar, sued by the seller for nonpayment of price, to implead the carrier for delay in transportation; it not being a necessary party within Rev. St. art. 1848, and the buyer having remedy against it by independent action.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary Parties.]

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by A. P. Moore's Sons, Incorporated, against the Early-Foster Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 230 S. W. 787.

Appellee, A. P. Moore's Sons, incorporated and doing business as wholesale grocers, with principal office at Tyler in Smith county, Tex., brought the suit again appellant, the Early-Foster Company, incorporated and engaged in the business of brokerage and buying and selling merchandise, with principal office in Waco, McLennan county, Tex. The action is to recover damages on account of the alleged breach of an oral contract of sale of a carload of sugar which appellant had purchased of the appellee on or about July 5, 1920. The petition alleged, omitting formal parts:

"That on or about the 5th day of July, 1920, the plaintiff contracted, sold and delivered to the defendant at Tyler, Smith county, Tex., 500 bags of sugar weighing 100 pounds each, aggregating 50,000 pounds, at 24½ cents per pound f. o. b. Chicago, Ill., amounting to the total sum of $12,250, which sum of money the defendant then and there obligated itself and promised to pay plaintiff at Tyler, Smith county, Tex. That defendant ordered and instructed plaintiff to have said sugar shipped to Detroit, Mich., in behalf of defendant and consigned to the Polish Co-operative Grocery Company of said city, and defendant further instructed plaintiff to attach railway bill of lading covering said shipment of sugar and to deliver a sight draft on the Polish Co-operative Grocery Company at Detroit, Mich., for the price of said sugar at 24½ cents per pound, aggregating the sum of $12,250. That at the time said sugar was sold by plaintiff to the defendant, and subsequently thereto, the defendant stated and represented to plaintiff in Tyler, Tex., that if plaintiff instead of demanding and receiving payment for said sugar from the defendant would draw a sight draft on the said Polish Co-operative Grocery Company and forward the same to Detroit, Mich., that the same would be promptly and immediately paid. That relying upon the said representations, and acting upon said instructions of the defendant, the plaintiff delivered said sugar in Tyler, Tex., to the carrier, the International & Great Northern Railway Company, and had the same shipped from Tyler, Tex., to Detroit, Mich., as designated by the defendant, to the Polish Co-operative Grocery Company at Detroit, Mich., and for the accommodation of the defendant drew a sight draft in Tyler, Tex., on said Polish Co-operative Grocery Company for the agreed price of said sugar, and forwarded the same to Detroit, Mich., for payment; but that when said sight draft was presented for payment the said Polish Co-operative Grocery Company failed and refused to pay the. same, and still fails and refuses to pay the sight draft, and on account of no fault or cause of plaintiff said Polish Co-operative Grocery Company failed and refused to accept and receive said sugar when tendered;" etc.

The appellant answered with a general denial, and also alleged specially that it acted only as a broker in bringing about the sale of the sugar to the Polish Co-operative Grocery Company, and was therefore in no manner liable for the purchase price; and further alleged that in the event it should

be determined from the facts that the appellant purchased the sugar for itself and that it did not act as a broker, then that such purchase was made f. o. b. Detroit, Mich., and that appellee promised and agreed to deliver the sugar within a reasonable time at Detroit, Mich., and that having failed so to deliver the sugar at Detroit, Mich., appellant was released from liability for the purchase price. Appellant also sought to recover in this suit over against the appellee broker's commissions on this car of sugar and other cars of sugar alleged to have been sold by the appellant as broker for the appellee. Appellant further sought to interplead the railway companies and have citation issued and served upon them returnable to the succeeding term of court. The pleading alleged that the carrier from Tyler, Tex., to Detroit, Mich., received the sugar on July 7, 1920, to be transported to Detroit, Mich., and that such carrier did not notify the Polish Co-operative Grocery Company until about the 12th of August, 1920, of the arrival of the car, and the fact of its arrival was not ascertained by the Polish Co-operative Grocery Company until that date; and that the carrier was negligent in failing to deliver the sugar and in failing to notify the Polish Co-operative Grocery Company within a reasonable time of the arrival of the sugar in Detroit, Mich. And the appellant asked that if the court should determine from the facts that the sugar was delivered to it at Tyler, Tex., and that the title to the sugar passed to it at Tyler, Tex., then and in that event it would be allowed to recover from the carrier the difference in the market value of the sugar, or such sum as the plaintiff might recover against the defendant.

Appellee answered appellant's plea in reconvention by admitting that there was due to it $250 arising from transactions other than the one in suit; but alleged that such sum was due by reason of moneys collected by the appellee for the appellant, and not as broker's commissions.

The case was submitted to the jury on the following special issues:

"1. Did the defendant, Early-Foster Company, agree to buy the car of sugar involved in this suit from the plaintiff, or was it acting as a broker for plaintiff in the negotiations with reference to said car of sugar?" Answer of the jury: "Yes, the defendant agreed to buy the car of sugar involved."

"2. Did the plaintiff exercise reasonable diligence and efforts to sell the sugar for the best price obtainable after the purchase price was refused by the Polish Co-operative Grocery Company or the defendant?" Answer of the jury: "Yes."

"1 (requested by the defendant). Was there an implied agreement on the part of the plaintiff to pay the defendant a commission of five cents per hundred pounds on the sugar shipped by the plaintiff to Detroit, Mich?" Answer of jury: "No."

"2 (requested by the defendant). Was there an implied agreement on the part of the plaintiff to pay the defendant a commission of five cents per hundred pounds on the sugar shipped to Gaston, N. C., and Omaha, Neb.?" Answer of jury: "No."

Upon the above verdict the court rendered a judgment in favor of the appellee and against the appellant for $5,812.76, with legal interest from August 18, 1920.

There is evidence in support of the finding of the jury that there was an agreement of purchase and sale, and not an agreement that appellant was to act as a broker for appellee in the sale of the sugar and to receive commissions therefor. The evidence shows that the negotiations through which the sale of the carload of sugar in question was consummated were conducted verbally between W. M. Foster, representing appellant at Waco, and Mr. H. L. Cambron, representing appellee at Tyler; the conversation taking place over long distance telephone. Mr. Cambron testified as to the agreement:

"On July 5, 1920, long distance telephone rang, and the party talking represented himself to be Mr. Foster of the Early-Foster Company. He asked me what sugar was worth. I told him what we were getting from the retail trade. He told me that he wanted two 500-bag rolling cars sugar, and I told him we had no rolling cars of sugar, but that we did have a 360-bag car that was being loaded in Sugarland that day. I told him that we would first have to call up the Sugarland people, and that it was possible that we could get them to load a 500-bag car if they could get an empty car in which to load it. When the price came up I asked him where he wanted to send this sugar, and he said to Chicago; so I asked him 25 cents a pound for the sugar f. o. b. Chicago. He said, 'That is too high,' that he could not make any money on it at that price. I then asked him what he could afford to pay for it, and finally the price was set at 24½ cents f. o. b. Chicago. I then repeated the trade as I understood it to Mr. Foster. I said to him: 'Now, let's see: That is 24½ cents net cash f. o. b. Chicago; and if I can get it shipped to-morrow you will take it.' He replied, 'Yes, but let me know this afternoon.' There was nothing said relative to the time of delivery of the sugar to the consignee, except that I would get the sugar shipped the following day. In this conversation I stated, '24½ cents net cash f. o. b. Chicago'— those three things. The three things made up the price. I told him the price would be 24½ cents net cash f. o. b. Chicago. That was all that was said, and there was nothing further said in that conversation between Mr. Foster and myself, or by either of us, relative to the term 'f. o. b.' Nothing at all was said between or by either of us in that conversation making up this agreement relative to our delivering the sugar—only that I would ship it the following day. I then called up the Sugarland people at Sugarland, Tex., and ascertained that I could get a 500-bag car on the following morning.

About 4 o'clock in the afternoon of the same day of the first conversation, I called up Mr. Foster and stated to him that I could get the sugar shipped all right on the following day. I then said to him: 'Now, let me see. Who do you want to send this sugar to?' He said, either, 'To the Chicago Grocery Company,' or, 'a Chicago grocery company,' 'but I will let you know to-night. I will wire you fully to-night.' I then said, 'Mr. Foster, will your man pay for this sugar sight draft?' and he replied, 'Yes, draw on him at sight.' Yes, something was said in the telephone conversation about on whom the draft should be drawn. We were to draw on his customer direct and to remit him for the difference in price at which we drew and price at which it was sold to him. It was on the instructions of Mr. Foster that I was acting in drawing the draft as I did in this case. No, I did not agree to anything else whatsoever, except that we were to draw a sight draft, to which he agreed. If there was anything further whatsoever that I agreed to with reference to this car of sugar, I don't remember it."

The testimony of Mr. Foster, of the Early-Foster Company, was to the effect that appellant did not buy the carload of sugar outright from appellee, but—

"We bought them on the brokerage basis. I just sold it for them (appellee), and we did not have any contract with them (appellee) other than a sale for their account—buying as a broker and making overage on the sugar."

He testified further as follows:

"Yes, Mr. Cambron asked me that day where we wanted that car of sugar shipped. I think we both discussed that. And I told him that we wanted it shipped to Chicago. I don't say that I absolutely told Mr. Cambron in that conversation that we were going to ship that sugar to Chicago; that is, I said it would very likely go to Chicago if we could get it out that day. Yes, I had him to quote me a price prepaid to chicago, or f. o. b. Chicago."

After the negotiations the following telegram was sent and received:

"Waco, Texas, July 5, 1920. D. B. Lewis, Indianapolis, Indiana. Confirm five hundred bags to Polish Co-operative, Detroit, if they will have bank wire they will pay draft. They have no rating. Also quote two more cars same price delivered Indianapolis Bank, guaranteed. Early-Foster Company."

Appellant was acting through Lewis, it appears, in making a resale of the sugar to the Polish Co-operative Grocery Company. Lewis telephoned appellant on July 7, 1920: "Polish Co-operative Detroit names Michigan Savings Bank." On the afternoon of July 6, 1920, appellee by telephone asked appellant for the shipping instructions on the car, and, as testified:

"They (appellant) said they could not give shipping instructions at that time; that they would give shipping instructions as soon as they could. That was on July 6."

The sugar was forwarded from Sugarland, Tex., by the Imperial Sugar Company, consigned to appellee at Tyler, Tex.; and the appellee received the bill of lading on July 7, 1920. It does not appear that the car had arrived at Tyler on July 7, 1920. Appellee then, as testified—

"called up the Early-Foster Company at Waco again on the next morning (July 7), having received bill of lading for the car of sugar (from Sugarland); and the effect of that conversation was that they still could not give me shipping instructions and that they would give them just as soon as possible."

On July 7, 1920, the following telegram was sent and received:

"Waco, Texas, 3:11 p. m., July 7, 1920. A. P. Moore's Sons, Tyler, Texas. Ship to Polish Co-operative Grocery Company, Detroit, Michigan. Make draft on them through Michigan Savings Bank. Twenty-four half. Early-Foster Company. 3:30 p. m."

Appellee, acting on the above telegram, then surrendered to the railway company the original bill of lading from Sugarland to Tyler, and took out a new bill of lading, dated July 7, 1920, issued by the same railway company and reading, as material to state:

"Received payment subject to the classifications and tariffs in effect on the date of the receipt of the carrier of the property described in the original bill of lading. At Tyler, Texas, July 7, 1920; from A. P. Moore's Sons, the property described below; consigned to order of A. P. Moore's Sons; notify Polish Co-operative Grocery Company; destination Detroit, state of Michigan; five hundred sacks S. F. G. Sugar."

Appellee paid to the carrier freight charges to Detroit, as appears from the following receipt:

"Received $209.06 to apply in prepayment of the charges on the property described thereon."

The car of sugar was then diverted to the Detroit destination; and the appellee, in accordance with the telegraphic instructions, drew and attached to the bill of lading and sent to the bank the draft upon the Polish Co-operative Grocery Company, Detroit, Mich., reading:

"Tyler, Texas, July 7, 1920. At sight pay to the order of Michigan Savings Bank for collection and return $12,250.00 with exchange."

The bill of lading was indorsed by the appellee. No return having been received on the draft, the appellee, on July 28, 1920, sent the following telegram:

"Tyler, Texas, 8:34 a. m., July 28, 1920. Polish Co-operative Grocery Company, Detroit Michigan. Kindly give sugar draft your immediate attention. Terms of sale were sight draft, not arrival."

Afterwards the draft was, it appears, returned unpaid, the car of sugar at that time not having arrived in Detroit. On August 4, 1920, Mr. Foster, of the Early-Foster Company, who, it appears, had gone to Detroit, wired the appellee as follows:

"Send draft direct to-night to Detroit Savings Bank. Unable to locate car. If here draft will be paid."

Appellee then drew, as suggested in the telegram, another and similar draft to the first one and sent it to the bank, which draft also appears to have been returned unpaid. The record does not disclose whether or not this second draft was presented to the Polish Co-operative Grocery Company for payment. Through delay on the part of the railroad company the car of sugar shipped by appellee on July 7, 1920, did not reach Detroit, Mich., until August 9, 1920. The Polish Co-operative Grocery Company received notice from the railway agent at Detroit on August 12, 1920, that the car of sugar had arrived and was ready for delivery. Mr. Andre, of the Polish Co-operative Grocery Company, testified:

"The bank notified us two or three times that the draft was there and that it should be paid. We told them that we would not pay it until the arrival of the car. I had not yet received notice nor been informed in any way that the car of sugar had arrived in Detroit at the time the bank informed me that the draft had been recalled by the drawer thereof. We made no particular effort to find out or ascertain whether or not the car of sugar had arrived in Detroit, for the reason we did not know over what railroad it was coming in. The only refusal which the Polish Co-operative Grocery Company ever made to the draft drawn by A. P. Moore's Sons, Incorporated, covering purchase price of the car of sugar, was made because the car of sugar was not in. We would have taken care of the draft, and were in a position to take care of it, if the car had come through in the regular way. We received from them (appellee) the invoice as well as the telegram of July 28, 1920. We purchased substitute sugar to take the place of the sugar in question on July 30, 1920. The reason why we wired A. P. Moore's Sons at Tyler, Tex., that we had returned the draft and considered the deal closed was because of the manner in which A. P. Moore's Sons were acting in recalling the draft. We received no communication whatever from A. P. Moore's Sons requesting the return of the first draft."

After the car of sugar "was turned down in Detroit," "about July 29," then appellant was so notified by appellee. Appellant wired appellee on August 18, 1920:

"Answering we will not pay your draft. We sold the sugar your account. We did not buy it. If we had we would have had you draw on us. However, if you will allow us assist you, we believe only be a short time before you would have your money back as soon as writer can reach Detroit. We sold sugar for you twenty-four half cents delivered Detroit."

Appellee then sold the sugar in Detroit, Mich., for the best price obtainable, which was $6,950.

Simpson, Lasseter & Simpson, of Tyler, and Spell, Naman & Penland, of Waco, for appellant.

Bulloch, Ramey & Storey, of Tyler, for appellee.

LEVY, J. (after stating the facts as above). Error is predicated upon the refusal of the court to give both the requested (1) special charge peremptorily instructing the jury to return a verdict in favor of the defendant, and (2) the special issue as follows:

"Did the plaintiff agree to deliver in Detroit, Mich., the car of sugar described in the plaintiff's petition?"

The propositions relied upon by the appellant are:

(1) The evidence without conflict showing that the appellee shipped the car of sugar to its own order Detroit, Mich., notify the Polish Co-operative Grocery Company, the title and possession of the sugar never at any time passed out of the appellee.

(2) Where a car of sugar was purchased f. o. b. Chicago, and by mutual agreement the destination was changed to Detroit, and there were no words or circumstances which would change the usual and ordinary meaning of the term f. o. b., then as a matter of law, the place of delivery was Detroit; or

(3) If, as a matter of law, the term f. o. b., Chicago, which was afterwards changed to Detroit by mutual agreement, as used in the purchase, does not fix the place of delivery, then the place of delivery intended by the parties was a question for the jury to determine under the agreement and all the circumstances.

[1, 2] The pleadings and evidence presented an issue of fact of whether or not the Early-Foster Company (1) agreed to buy outright the car of sugar in question, or (2) was acting as a broker for A. P. Moore's Sons in the negotiations with reference to the car of sugar. There is sufficient evidence, it is conceded, to authorize the jury to determine that the parties made a contract of purchase and sale of a car of sugar. And the determination of whether or not the court erred in refusing to give the requested special charges is solely dependent upon the question of where, under the contract between the parties, the sugar was to be delivered and the title to it passed to the buyer. Therefore if, under the contract, the appellee, as seller, was to deliver the sugar at Chicago, afterwards changed to Detroit, and the sale was not complete until the delivery was made, or if the place intended by the parties at which delivery and the passing of the title were to be consummated was a question of fact for

decision by the jury, then the contention of appellant should be sustained. But if there was, as alleged, a consummated sale of the sugar with delivery at Tyler, Tex., then the ruling of the court should be sustained. And in view of the evidence it is believed that the court did not err in refusing to give either of the two special charges; and the proposition of appellant cannot, it is concluded, be sustained. The contract of the parties was an oral one, made on July 5, 1920, and is contained in the testimony of Mr. Cambron included in the statement above. The evidence indicates with reasonable clearness that the Early-Foster Company wanted to buy 500 sacks of sugar in "a rolling car," or car ready for movement, for resale to either "the Chicago Grocery Company" or "a Chicago grocery company" at Chicago. A. P. Moore's Sons agreed to sell the 500 sacks of sugar on a loaded or "rolling car," which had been by them obtained from the Imperial Sugar Company at Sugarland, Tex., and which was by the Imperial Sugar Company to be "shipped" to A. P. Moore's Sons from Sugarland to Tyler on "to-morrow" or "the day following," which was July 6, 1920. It was stipulated that the price of the sugar was "twenty-four and one-half cents per pound, net cash, f. o. b. Chicago." The circumstances revealed in the evidence show, in point of fact, that the term "f. o. b. Chicago" was used and intended only to fix the price of the sugar, and no circumstances appear during the negotiations indicating a contrary intention. And the contract specifically provided that the seller was to receive payment of the purchase price immediately upon presentment of the "sight draft." The further undisputed evidence shows that on "the day following," which was July 6, 1920, the car of 500 sacks of sugar was "shipped" by the Imperial Sugar Company from Sugarland consigned to A. P. Moore's Sons, Tyler, Tex., and that the car was on July 7, 1920, while in transit to Tyler, by the appellee, on instructions of appellant, diverted to the Polish Co-operative Grocery Company of Detroit, the party to whom appellant had by its own independent contract resold the sugar. Thus in the facts the appellee had sacked and placed the sugar in "a rolling car," or car ready for movement, on "the following day." This was in accordance with the agreement. On July 7, 1920, the appellant directed the appellee to "ship" the sugar to Detroit to the party to whom it had resold it. And acting on these instructions, appellee shipped the sugar as directed and drew "the sight draft" for the payment to it of the purchase price of the sugar. Drawing the sight draft was in accordance with the agreement that appellee should be paid the purchase price immediately on presentment of the draft. There was no agreement that appellee should receive payment of the purchase price on delivery at Chicago or Detroit, and there was no agreement that appellee should forward or deliver the sugar to the purchasers under appellant. When appellant directed the car of sugar to be forwarded from Tyler to Detroit to its own purchaser of the sugar, and appellee complied with such instruction, there remained nothing further for appellee to do but to draw the draft in payment of the purchase price. In these facts there was, it is concluded, conclusively shown a consummated sale of the sugar at a fixed price, with payment of the purchase price immediately on presentment of the draft. The effect of the facts is to show a delivery and acceptance at Tyler, Tex., so as to pass the title to the sugar, as between the parties, to the appellant. And on the authority of the Supreme Court—cases below—which we are required to follow, there being no agreement to deliver the sugar at Chicago or Detroit, then delivery of the same to the railway company, as done in this case, as a matter of law, constituted a delivery and passed the title to the sugar to the appellant, the buyer, although the seller may not have parted with control over the sugar until the draft was paid. Robinson & Martin v. Ry. Co., 105 Tex. 185, 146 S. W. 537, as can be seen from the authorities below. The stipulation "twenty-four and one-half cents net cash. f. o. b. Chicago" does not necessarily, as a matter of law, fix the place of delivery at Chicago. 23 R. C. L. § 161, p. 1338; 35 Cyc. pp. 173, 174; Burton & Beard v. Nacogdoches Crate & Lumber Co., 161 S. W. 25; U. S. v. Andrews & Co., 207 U. S. 229, 28 Sup. Ct. 100, 52 L. Ed. 185.

[3] It is insisted by the appellant under proper assignments of error that the court erred in dismissing and in not allowing it to implead the railway companies as parties to the suit. Appellant filed a cross-action against the railway companies transporting the car of sugar from Tyler to Detroit, Mich., for negligent delay in transportation of the sugar, and moved for a continuance of the suit for the purpose of having citation served upon the defendants in the cross-action. The court, upon the verbal motion of the appellee, entered an order dismissing the cross-action against the railway companies, and overruled the motion to continue the cause. The appellant's cross-action against the railway companies is entirely separate and distinct from that of the appellee against appellant, and the appellee had no interest in the former. A judgment in the suit of appellee against the appellant adjudicating that appellant was the owner of the sugar shipped would be binding against appellee, and would be admissible against the railway companies in a suit against them by appellant as showing full title to the sugar in appellant. A judgment therefore in favor of appellant against the railway companies for

damages in the shipment would fully protect the railway companies. The railway companies, then, were not necessary parties to the suit under the provision of article 1848, R. S. The appellant having the right to bring an independent action against the railway companies, as it has, no injury resulted to appellant on account of the dismissal of the cross-action. It is therefore concluded that the court, in the exercise of his discretionary power, did not err in the rulings complained of. Keel & Son v. Gribble-Carter Grain Co., 143 S. W. 235; Carder v. Johnson, 109 S. W. 944; Andrews v. Rice, 198 S. W. 666.

We have considered the remaining assignments of error, and conclude that each of them should be overruled as being without injury to the appellant.

The judgment is affirmed.

---

⚖= For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes